The opinion of the Court was delivered by
Fenner, J.
The Act No. 108 of 1808, which is tho charter of the North Louisiana & Texas Railroad Company, is prefaced by a preamble reciting that, “ Whereas, the Vicksburg, Shreveport & Texas Railroad Company did, on or about. September 1, 1857, mortgage its entire railroad, extending from the Mississippi river to the line of boundary between Louisiana and Texas, with its right of way, lands, franchises, etc., etc.; and whereas, all of said described property, rights, privileges and franchises wore sold at sheriff’s sale, under an order of seizure and sale granted under said mortgage;” and the Act thereupon proceeds to provide, in its first and following section, that Ray, Gordon, Ludeling, Stubbs, Waddell, Horne and Pinckard, “ purchasers at the sheriff’s sale of the property of the Vicksburg, Texas & Shreveport Railroad Company, on the 3d February, I860, be and they are hereby declared to have all the rights and powers which the Vicksburg, Shreveport & Texas Railroad Company had,” and to create said named persons into a body corporate under the name of *949 “ the North Louisiana ¡fe Texas Railroad Company.” In Sections 11 and 12, the said Act authorized the issuance to the said Company, by the State, of six thousand dollars of State bonds for every mile of track when completed, with eight per cent, 'interest, payable semi-annually; payment of the principal and interest to be secured by a second mortgage in favor of the State, upon the said railroad, fixtures and appurtenances; the Company having the right to execute a first mortgage to raise money for the completion of the road, to the amount of $15,000 per mile, which amount was subsequently increased to $25,000 per mile.
Under said Act, the aggregate sum of the bonds issuable, if the road ■ had been completed, would have been $1,122,000, and of this amount $546,000 had been actually issued prior to the year 1872.
By Act 97 of 1872, it was provided: “ That in lieu of the second mortgage, required by the 11th Section of the Act of 1868, * * * the said North Louisiana & Texas Railroad Company may give stock of said Company to the State to an amount equal to the aggregate sum of the State bonds issued or to be issued under said Act, No. 108 of 1868, to-wit: 11,220 shares, or $1,122,000 of the 60,000 ^shares, or $6,000,000 of the capital stock of said Company. And in consideration of the issue and delivery of said stock, by said Company to the State, the said Company shall be relieved from all liability on the aforesaid bonds of the State; and, that on delivery of the stock aforesaid, the remainder of the whole number of bonds authorized by Act No. 108 of 1868, viz: 576 bonds of $1,000 each, shall be immediately issued and delivered to the President of said Company, by the Governor of the State.”
The provisions of this Act were duly accepted by the Company. The 11,220 shares of stock were delivered to the State, and a certificate of said stock issued and delivered, and the Governor signed and delivered the remaining $576,000 of bonds.
The evidence shows that these bonds were divided pro rata among the stockholders of the Company who had furnished the shares of stock which had been transferred to the State. There was nothing in the law to prevent this disposition of the bonds.
Prior to the passage of even the Act of 1868, a certain suit, entitled Henry R. Jackson et al. vs. John T. Ludeling et al., had been filed and was pending in the Circuit Court of the United States, at New Orleans, which was a suit by creditors of tire Vicksburg, Shreveport & Texas Railroad Companj’', the object of which was to annul and set aside the sheriff’s sale, which had been made of the railroad right of way, franchises and other property of that Company, to Ray, Ludeling and *950 their associates; and which, as heretofore stated, was referred to and set out in the Act of 1868.
By virtue of a judgment and decree rendered by the Supreme Court of the United States in said suit, the sale aforesaid was declared fraudulent, null and void, and was cancelled and set aside, and the title of the North Louisiana & Texas Railroad Company, derived through said sale, was annulled and divested, and the property, rights and franchises covered thereby, were ordered to be sold to satisfy the mortgage creditors of the Vicksburg, Shreveport &. Texas Railroad Company.
In subsequent proceedings, in the same cause, it was decreed that the North Louisiana & Texas Railroad Company should be paid, out of the proceeds of sale, the amount of $391,959.40, as representing the value of improvements and betterments, attached to the road by said Company during its possession of the same.
The objects of the present action, according to the prayer of the petition, are as follows:
■ 1. To annul, resolve and set aside the contract entered into between the State and defendant, by virtue of Act No. 97 of 1872.
2. To reinstate and render executory the State’s mortgage resulting from Sections 11 and 12 of Act No 108 of 1868, upon all the property, rights, privileges and franchises belonging to the defendant, and particularly upon the improvements and betterments put upon the road by defendant, and upon the funds arising from the sale of the same, and adjudged to be due said defendant by the decree in the case of Jackson et al. vs. Ludeling et al.
3. To recover judgment for the amount of the bonds and interest, issued by the State to said defendant, with mortgage as aforesaid upon the property and funds above set forth.
4. To obtain an injunction, restraining the defendant from, in any manner, disposing of, or incumbering said judgment and fund, to the prejudice of plaintiff.
The fundamental relief sought is the annulment of the contract entered into by virtue of Act 97 of 1872, that being the foundation and condition precedent of all other relief demanded.
Tlie legal grounds upon which the annulment of the contract is claimed, as set forth in the petition, are substantially that the sole cause or consideration of that contract was the ownership by defendant of the property, rights and franchises of the Vicksburg, Shreveport & Texas Railroad, by virtue of the purchase of the same, made by the authors of defendant at the sheriff’s sale; that in transferring the stock to the State, the defendant transferred an undivided interest in said property and became warrantors of the title thereto; that the sole *951 canse.or consideration of said contract liad suffered a complete failure and destruction, and that there had been a complete breach of the warranty by which defendant was bound; and that both the consideration and the breach of warranty happened by a vice that was inherent in the origin of the pretended title of the defendant in and to the property aforesaid.
Accepting the theory of the plaintiff’s case, as expounded by counsel in their written and oral arguments, the contract, under Act 97 of 1872, is claimed to be a contract of exchange, by which the State gave its second mortgage on the property, rights and franchises of the Company, in exchange for the stock of the defendant corporation to an equal amount.
A more accurate statement would he that the State exchanged its second mortgage for the bonds already issued, and $576,000 additional bonds, for which it never had any mortgage for stock in the corporation.
The interpretation placed by plaintiff’s counsel upon their own petition is, that the relief sought is based on two grounds, viz:
1. Error as to the principal cause or consideration of the contract.
2. Breach of warranty of title to the thing given by the defendant in exchange.
It is essential that this theory of the pleading should prevail, because otherwise, the action would fall under the prescription of five years, under C.C. 3542, pleaded by defendant; while, upon this theory, the action escapes this prescription, because the prescription of the action to annul, on the ground of error, only runs from date of discovery of error, and that for breach of warranty from date of eviction. C. C. 2221; Mulford vs. Wimbish, 2 An. 443; 3 An. 328 ; 3 An. 353; 13 An. 307.
The plea of prescription was sustained by the Judge a quo, as we think, erroneously; but that will not prevent us from deciding the ease on other grounds.
The case was fully heard on the merits, and all exceptions and pleas were referred thereto.
By the express terms of the Code of Practice, this Court is required to “ pronounce on the case the judgment which the lower court should have rendered, if it be in possession of all the facts and testimony to enable it to pronounce definitively.” C. P. 905; Miller vs. Mercier, 3 N. S. 234; Levi vs. Weil, 24 An. 223; 8 N. S. 63; 19 An. 525.
We, therefore, proceed to consider the ease on other grounds.
It is to be observed that no assault is made upon the contract arising under the Act of 1868. On the contrary, plaintiff asserts and seeks to reinstate and enforce that contract. Therefore, the motives, objects and representations under which the contract of 1868 was made, do not *952 enter into this case. The sole attack, here, is upon the contract under Act 97 of 1872. That Act contains no representations and no statement of motives. It is a simple, unqualified proposition, on the part of the State, to accept stock of the Company in exchange and substitution for the second mortgage security by which its bonds already issued were secured, aud for the additional bonds then authorized to be issued. This proposition was accepted by the Company, became thereby a contract, and was completely executed.
It is not pretended that plaintiff’s title to the stock, received by it, has ever been questioned, or that it has ever been disturbed in the possession and enjoyment thereof, or that defendant, in connection with this contract, made any representation as to the value of the stock, or as to its corporate property, or the nature1, value, or title thereof.
The evidence establishes that the defendant corporation did not then create and issue the stock which it1 transferred to plaintiff. The stock had already been issued and had passed into the possession of individual stockholders as their private and individual property. The defendant acquired the stock, which it transferred to the State, from these individual stockholders, and it paid these latter for their stock with the very bonds which it received from the State.
It merely became the medium through ■which these stockholders transferred their stock to the State.
The State got all it bargained for, to-wit: the stock, and it yet holds the same.
The questions are: whether the transferrer of shares of stock in a corporation, by sale or exchange, warrants anything except the title to the stock ," whether he becomes, in any manner, the warrantor of the title of the corporation itself to the corporate property held and possessed by it) and whether error or mistake as to the nature, value and title of the corporate property, can invalidate the sale or exchange of stock in the corporation.
These questions must undoubtedly be answered in the negative.
Shares of stock are themselves property, susceptible of sale or exchange like any other property.
In a certain sense, they represent an interest in the corp orate estate, and a conveyance of them is a conveyance of such an interest. But it is not a conveyance of a particular interest in particular property. The share of stock is simply an interest in the rights and property of the corporation, whatever they may be, and subject to its obligations. It resembles the right of an heir to a succession under administration, as to which the Codé specially provides, that “ when a man sells his right to a succession, without particularly specifying the objects of *953 which it consists, he only warrants his title as heir.”- C. C. 2050, 2513 ; Grayson vs. Sanford, 12 An. 646.
So the transferrer of stock in a corporation, without specifying the particular property held by the corporation, simply warrants his right as a stockholder, or his title to the stock. The transferree simply acquires his rights as a stockholder, whatever they may be. Though it should subsequently transpire that the corporation was entitled to some valuable right or property, the ownership of which was not known or suspected at the time of the transfer, the transferrer could not claim nullity on the ground of error, at least, in absence of concealment or fraud. Nor. can the transferree annul, on the ground, of error, because it turns out. that some property which the corporation was supposed to own, did not belong to it. Such error does* not touch the nature, the object, or the cause of the contract. The right as stockholder was the sole object and cause of the contract, and that objhct and cause existed and remained perfect and complete, with all the incidents and qualities which, in law, the transferrer warranted.
It is not pretended that there was any concealment or deceit by the corporation in regard to its ownership of this-property. There was no representation on the subject. There is no pretense that the corporation knew or believed that it had not a good title thereto. On the contrary, the title had been the subject of judicial investigation in two cases, and had been therein sustained. Branner vs. Handy, 18 An. 537; Gordon vs. Vicksburg, Id. 550.
Besides, the suit of Jackson vs. Ludeling et al., in which the title was finally annulled, was pending at the date of the contract, and had been since 1866. It is not alleged or proved that the State was not aware of the pendency of that suit at the date of the contract. It took the chances of the result thereof, like all other stockholders.
Different questions might arise if this suit demanded the nullity of the contract entered into under the Act of 1863, as to which it might be forcibly urged that the title to this property, expressly recited in the Act, did form the cause of the contract and was warranted thereby. But, as before stated, the contract of 1863 is not assailed herein, but is, on the contrary, affirmed, and reinstatement and execution thereof demanded.
In the contract of 1872, on the other hand, the thing given in exchange was the stock, title to which alone was -warranted, which title has never been impugned.
That the State made a bad bargain cannot be denied, but she had the right to make that bargain, and she did make it, and she must abide by it.
*954 Contracts of exchange, unlike contracts of sale, are not dissoluble on the ground of lesion, except in specified cases, not covering the present action. C. C. 2664.
These views relieve us from the consideration of various special defenses which, otherwise, would present questions of serious difficulty.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from, in so far as it maintains the plea of prescription, be annulled, avoided and reversed, but that in so far as it rejects and dismisses the suit of plaintiff, at its costs, it be. affirmed, plaintiff and appellant to pay the costs of this appeal.